LEWIS v CITY OF DETROIT

WORKMEN'S COMPENSATION—LOSS OF FINGERS—LOSS OF HAND—INDUSTRIAL LOSS OF USE—TOTAL LOSS OF USE.

There must be a total incapacitating loss of use which renders an organ or member industrially useless for any type of work, skilled or unskilled, in order to establish the industrial loss of use for the organ or member; therefore, a claimant who had lost four fingers of his left hand had not lost the industrial use of that hand where he could still make a limited use of the hand.

Appeal from the Workmen's Compensation Appeal Board. Submitted Division 1 December 10, 1974, at Detroit. (Docket No. 19569.) Decided February 12, 1975.

Claim by Rufus Lewis against the City of Detroit for workmen's compensation. Denial of compensation affirmed by the Workmen's Compensation Appeal Board. Plaintiff appeals by leave granted. Affirmed.

*Kelley & Hazen,* for plaintiff.

*Elliott S. Hall,* Corporation Counsel, and *Cornel Smith* and *Thomas L. Walters,* Assistants Corporation Counsel, for defendant.

Before: BRONSON, P. J., and McGREGOR and CARLAND,* JJ.

REFERENCE FOR POINTS IN HEADNOTE
58 Am Jur, Workmen's Compensation §§ 287, 288.

* Former circuit judge, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

CARLAND, J. This case comes to this Court on appeal from a decision of the Workmen's Compensation Appeal Board affirming the referee's decision that plaintiff is partially disabled but has not sustained "loss of industrial use" of his left hand.

Plaintiff was employed as a tree artisan by the City of Detroit, Parks and Recreation Department, Forestry Division. Briefly, the job requires the handling of heavy equipment in the repair, planting, removal and trimming of trees. While feeding brush into a "clipper" during the course of his employment on July 28, 1969, the plaintiff suffered a serious injury through the amputation of the four fingers of his left hand. Neither the thumb nor the palm were injured. Following hospitalization and a period of recuperation, he returned to work in October 1969. For the injuries so received, the defendant paid the plaintiff compensation benefits in the amount of $92 per week for 109 weeks. After these benefits ceased in September 1971, plaintiff filed a claim for an additional 106 weeks of compensation claiming the loss of the industrial use of his left hand.

Upon his return to work in October, the plaintiff could no longer handle the saws and pruning devices used by a tree trimmer. He continued as a part of the crew as a laborer in raking and cleaning up debris. In the performance of this work, the plaintiff used his left hand to control and guide the rake by grasping it between his thumb and the remaining stubs of his fingers.

At the hearing before the referee, it was elicited from plaintiff that while he could hold nothing with his left hand, he was able to guide the rake in some measure, although the rake, at times, slipped from his hand. Plaintiff further testified that even guiding the rake in this manner resulted

in pain which was of such a nature as to cause him to lose time from his work.

Also testifying at the hearing was a Dr. Horvath who after reviewing the reports of plaintiff's regular physician and examining the plaintiff stated:

"Primary use of the left hand in this man would be the wrist of the hand, where the right hand does the primary work and the left one is his assister or supporter * * * . Perhaps he could prop a rake into his hand or a broom or something of that sort that didn't require a great deal of pressure and have his left hand acting as an assistant to the right one."

The doctor then testified that in his opinion the plaintiff had not suffered loss of the industrial use of his left hand. His opinion was based on the assumption that as long as the thumb remains mobile, there may be some use of the hand. Moreover, a "pinch grasp" still remained "since there is some stumps which can oppose the thumb".

In upholding the referee's decision that the industrial loss of use had not occurred, the appeal board pointed to the plaintiff's use of the injured hand to a limited degree in earning wages and to the testimony of Dr. Horvath. It did find, however, that at the time of the injury the plaintiff was engaged in skilled labor.

In this appeal, the plaintiff argues that both the referee and the appeal board applied an incorrect legal standard in determining that plaintiff had not lost the industrial use of his hand. Plaintiff contends that the correct standard is whether the hand can still be used for grasping or prehension which is the principal function of the hand. Indeed, until 1968 the standard which plaintiff urges was the law in Michigan, *Mitchell v Metal Assemblies, Inc,* 379 Mich 368; 151 NW2d 818 (1967); *Lovalo v Michigan Stamping Co,* 202 Mich 85; 167 NW 904 (1918).

However, in 1968 the Supreme Court adopted a new standard whereby the question of whether there has been an industrial loss of use must be determined:

"[T]here must be that total incapacitating loss of use which renders the organ or member industrially useless for any type of work, skilled or unskilled. To hold otherwise we think would be a logical contradiction. Plaintiff's injury has not amounted to the actual physical loss tantamount to destruction or amputation contemplated by the specific loss schedule. The test is not the degree of loss measured by the requirements of the skill of the injured workman. The test is the degree of loss as compared with actual physical loss by destruction or amputation." *Hutsko v Chrysler Corp,* 381 Mich 99, 102–103; 158 NW2d 874 (1968). In accord is *Chaffin v Grand Rapids Metalcraft,* 38 Mich App 200; 196 NW2d 20 (1972).

This total incapacity standard for loss of industrial use of the injured appendage has recently been reaffirmed by the Supreme Court, *DeGeer v DeGeer Farm Equipment Co,* 391 Mich 96; 214 NW2d 794 (1974). Thus it seems quite clear that the fundamental premise for plaintiff's appeal is erroneous.

Moreover, there clearly is evidence in the record which supports the decision of the referee and the appeal board that plaintiff has not lost the industrial use of his left hand under the *Hutsko* standard. Thus, Dr. Horvath's testimony was that the plaintiff could make a limited industrial use of his left hand. Plaintiff's own testimony did not negate that of the doctor because he himself stated that he could use the hand for periods of time without it aching. In these circumstances, the factual determination made below is conclusive and the decision of the Workmen's Compensation Appeal Board is affirmed.